UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FOOD & WATER WATCH,<br><br>      Plaintiff,<br><br>      v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, *et al.*,<br><br>      Defendants. | Civil Action No. 17-1714 (BAH)<br><br>Chief Judge Beryl A. Howell |

**MEMORANDUM OPINION**

Since this case began in August 2017, the plaintiff Food & Water Watch has been prodding the defendants—the U.S. Department of Agriculture, the Farm Service Agency ("FSA"), and Deanna Dunning, an FSA Farm Loan Officer—to provide a complete administrative record ("AR"). Finally, in December 2018, that happened. The completed AR included a version of the final environmental assessment ("EA") that the FSA completed in July 2015 in connection with the agency's guarantee of a loan to One More Haul Farm for the construction and operation of a concentrated animal feeding operation ("CAFO"). With that addition to the AR, the plaintiff now seeks leave to amend its complaint to add two new claims and modify a third. For the reasons discussed below, the plaintiff's motion is granted.

**I. BACKGROUND**

This case relates to the FSA's 2015 guarantee of a loan to One More Haul Farm. The underlying allegations, as well as the relevant statutory and administrative framework, were detailed in the Court's prior opinion denying the defendants' motion to dismiss the complaint and granting the plaintiff's motion to compel the complete AR. *See Food & Water Watch v. U.S.*

1

*Dep't of Agric.*, 325 F. Supp. 3d 39, 42–47 (D.D.C. 2018).  Only the background relevant to the pending motion is described here.

      The FSA is a component of the Department of Agriculture responsible for overseeing agricultural support programs including, as relevant here, the Guaranteed Farm Loan Program. *See* 7 C.F.R. § 762.101, *et seq.*  Under this program, a borrower can apply for the FSA to guarantee a percentage of a loan made by a qualified agricultural lender if the loan is for certain purposes.  *Id.* § 762.121(b)(1)–(5). One More Haul Farm sought such a loan guarantee from the FSA in early 2015 to "purchase land and construct and operate a poultry CAFO."  Proposed 1st Am. Compl. ("Am. Compl.") ¶ 54, ECF No. 42-1.

      Under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq.*, the FSA, as any federal agency, is required "to the fullest extent possible," to prepare an Environmental Impact Statement ("EIS") before taking any "actions significantly affecting the quality of the human environment," *id.* § 4332(2)(C).  An EIS accounts for various factors, including "the environmental impact of the proposed action," "any adverse environmental effects which cannot be avoided should the proposal be implemented," and "alternatives to the proposed action," *id.* § 4332(2)(C)(i)–(iii).  "The Council of Environmental Quality (CEQ), established by NEPA with authority to issue regulations interpreting it, has promulgated regulations to guide federal agencies in determining what actions are subject to" the EIS requirement.  *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 757 (2004) (citing 40 C.F.R. § 1500.3).  These regulations permit an agency to prepare "a more limited document, an Environmental Assessment (EA), if the agency's proposed action neither is categorically excluded from the requirement to produce an EIS nor would clearly require the production of an EIS."  *Id.* (citing 40 C.F.R. § 1501.4(a)–(b)).  An EA is a "'concise public document' that '[b]riefly provide[s] sufficient evidence and

analysis for determining whether to prepare an [EIS].'" *Id.* (quoting 40 C.F.R. § 1508.9(a)). If, after conducting an EA, the "agency determines that an EIS is not required under applicable CEQ regulations, it must issue a 'finding of no significant impact' (FONSI), which briefly presents the reasons why the proposed agency action will not have a significant impact on the human environment." *Id.* at 757–58 (citing 40 C.F.R. §§ 1501.4(e), 1508.13). During this process, the agency "must insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken." 40 C.F.R. § 1500.1(b); *see also Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989) (noting that this disclosure requirement "guarantees that the relevant information will be made available to the larger audience that may also play a role in both the decisionmaking process and the implementation of that decision").

A federal loan guarantee for One More Haul Farm's CAFO qualified as an action for which an EA was required. *See* 40 C.F.R. § 1940.312(c)(9)–(10) (2015); Defs.' Mem. Supp. Mot. J. Pleadings at 2, ECF No. 17-1 ("FSA is required to complete an environmental review prior to making a commitment to issue a loan guarantee.").[1] Accordingly, as the proposed complaint alleges, in April 2015, the FSA published for notice and comment a draft EA for One More Haul Farm's application. Am. Compl. ¶ 55. After receiving several comments on the initial draft, the FSA, in May 2015, published a second document, "labeled as an 'EA/FONSI.'" *Id.* ¶ 56. That version also received comments, including one the plaintiff submitted on July 20, 2015. *Id.* Sometime after the FSA published the May 2015 EA for comment, the agency "contracted with

---

[1] While all federal agencies must comply with NEPA and CEQ's regulations, agencies have "flexibility in adapting its implementing procedures." 40 C.F.R. § 1507.1; *see also id.* § 1507.3(a) (requiring agencies to "adopt procedures to supplement these regulations"). FSA regulations effective in 2015, which have since been replaced by regulations not given retroactive effect, *see* FSA, Final Rule, Environmental Policies and Procedures; Compliance with the National Environmental Policy Act and Related Authorities, 81 Fed. Reg. 51,274, 51,283 (Aug. 3, 2016), required an EA for a class of agency action that encompassed One More Haul Farm's application for a loan guarantee, *see Food & Water Watch*, 325 F. Supp. 3d at 43–44 (explaining FSA regulations in effect in 2015).

an environmental consulting firm to review the comments and the Agency's analysis." Defs.' Opp'n Pl.'s Mot. Amend ("Defs.' Opp'n") at 4, ECF No. 46.  On July 22, 2015, two days after the plaintiff submitted its comment, the FSA issued a third version of the EA.  Am. Compl. ¶ 58. The July 2015 EA was "significantly different than the May EA/FONSI" and did not include a FONSI.  *Id.* ¶ 59.  The FSA then informed the lender that the loan to One More Haul Farm would be guaranteed.  *Id.* ¶ 60.  The loan guarantee was executed on August 3, 2015.  *Id.* ¶ 61.

In August 2017, the plaintiff instituted this action.  *See* Compl., ECF No. 1.  Generally, the plaintiff's complaint alleged that the FSA's guarantee of One More Haul Farm's loan violated procedural and substantive requirements of the APA, NEPA, and NEPA's implementing regulations.  *Id.* ¶¶ 3, 60–121.  The initial complaint contained nine claims.  *Id.* ¶¶ 60–121.

The defendants subsequently provided the AR to the plaintiff in December 2017.  *See* Notice of Lodging of AR Index (Dec. 6, 2017), ECF No. 14.  A version of the July 2015 EA, which the FSA described as the "Final Environmental Assessment package" was included.  AR Index at 4 (Dec. 6, 2017), ECF No. 14-2.  Shortly after, the plaintiff wrote the defendants with concerns about whether the AR was complete, Defs.' Opp'n, Ex. 3, Pl.'s Dec. 22, 2017 Ltr., ECF No. 46-3, and then sent a follow-up letter the next month, Defs.' Opp'n, Ex. 3, Pl.'s Jan. 24, 2018 Ltr., ECF No. 46-3.  Neither letter expressed any concern about the July 2015 EA included in the AR, but the plaintiff's letters were explicit that the "Plaintiff's review of the AR continues and additional issues may arise."  Pl.'s Dec. 22, 2017 Ltr. at 1; *accord* Pl.'s Jan. 24, 2018 Ltr. at 1.

Next, in March 2018, the defendants moved, under Federal Rule of Civil Procedure 12(c), for judgment on the pleadings as to each claim, arguing that the plaintiff's claims were moot and that the plaintiff lacked standing.  *See generally* Defs.' Mot. J. Pleadings, ECF No. 17.

Two weeks later, the plaintiff moved to compel the complete AR. *See generally* Pl.'s Mot. Compel AR, ECF No. 18.

Briefing on the two motions followed, and then, in May 2018, the defendants supplemented the AR. Notice of Lodging of AR Index (May 22, 2018), ECF No. 25. Additionally, the defendants agreed to "create a separate volume of documents for the [AR] for the financial documents related to the lending decision." *Id.* at 1.

In September 2018, the defendants' motion for judgment on the pleadings was denied, and the plaintiff's motion to compel the complete AR was granted. *Food & Water Watch*, 325 F. Supp. 3d at 59. As to the AR, the defendants were ordered to "supplement the [AR] with the final loan guarantee and any other loan and loan-guarantee-related documents" and to "produce a privilege log identifying and justifying any claims of privilege for materials that continue to be withheld and for any redactions to materials that are included in the [AR]." Order (Sept. 7, 2018) at 1–2, ECF No. 26.

The plaintiff received Volume II of the AR—the financial documents—in October 2018, *see* Joint Status Report (Oct. 31, 2018) at 2, ECF No. 32, but flagged concerns with its adequacy almost immediately, *see* Defs.' Opp'n, Ex. 3, Pl.'s Nov. 2, 2018 Ltr., ECF No. 46-3; Defs.' Opp'n, Ex. 3, Pl.'s Nov. 5, 2018 Ltr., ECF No. 46-3. The defendants produced an updated Volume I—the EA documents—at the beginning of November 2018. *See* Joint Status Report (Nov. 7, 2018) at 2, ECF No. 33.

Disagreements about the AR persisted. On November 14, 2018, the plaintiff wrote the defendants with lingering concerns about the completeness of the AR. Defs.' Opp'n, Ex. 3, Pl.'s Nov. 14, 2018 Ltr., ECF No. 46-3. That letter, which asserted that the "Plaintiff's review of the AR continues and additional issues may arise," did not, however, express concern about the July

2015 EA. *Id.* Independent of the November 14, 2018 letter, the defendants updated the AR once more on November 16, 2018. Joint Status Report (Dec. 3, 2018) at 1, ECF No. 36. In response to the newest modification to the AR, the plaintiff, on November 27, 2018, sent the defendants a letter articulating additional concerns. Defs.' Opp'n, Ex. 3, Pl.'s Nov. 27, 2018 Ltr., ECF No. 46-3. In that letter, the plaintiff raised for the first time that "Plaintiff has now seen two different versions of the July 22, 2015 EA—one was produced through FOIA in September 2016 . . . and the other was produced in the AR." *Id.* at 5. The FOIA version, unlike the AR version, "contained checkmarks at the end of the EA indicating environmental determinations Defendants had made," Pl.'s Mot. Amend at 1–2, although "the box indicating whether agency personnel made a FONSI recommendation based on the July EA remained unchecked," *id.* at 4.

The defendants committed to considering the plaintiff's concerns and making any further update to the AR by December 21, 2018. Joint Status Report (Dec. 3, 2019) at 2. A month after receiving the plaintiff's letter, the defendants responded that the FOIA version of the July 2015 EA was in fact the FSA's final EA and should have been included in the AR and that the version included in the AR did not display the checkmarks due to a scanning error. Pl.'s Mot. Amend, Ex. 3, Decl. of Tarah Heinzen, Ex. A., Defs.' Dec. 21, 2018 Ltr. at 3–4, ECF No. 42-3. The AR provided to the plaintiff on December 21, 2018 included the proper July 2015 EA. *Id.* at 4.

At the start of 2019, the parties reported that the plaintiff intended to file an opposed motion for leave to amend the complaint. Joint Status Report (Jan. 4, 2019) at 2, ECF No. 37.[2] In that motion, filed in February 2019, the plaintiff insists that until the defendants reconciled the

---

[2] The Joint Status Report noted that the parties still disagreed about the completeness of the AR and that the plaintiff would file another motion to compel the complete AR. Joint Status Report (Jan. 4, 2019) at 2. The plaintiff filed that motion. *See* Pl.'s 2d Mot. Compel AR, ECF No. 43. Soon after, the parties filed a joint motion for a protective order, *see* Mot. Protective Order, ECF No. 44, which the Court entered, *see* Order (Mar. 13, 2019), ECF No. 47. With the cover of that protective order, the parties resolved their disputes about the completeness of the AR, and, with the plaintiff's agreement, *see* Pl.'s Response to Show Cause Order, ECF No. 50, the second motion to compel the complete AR was denied as moot, Min. Order (Mar. 19, 2019).

6

competing versions of the July 2015 EA, and confirmed that the final version included the checkmarks observable in the FOIA version, some of the factual circumstances surrounding the FSA's guarantee of One More Haul Farm's loan were unsettled.  Pl.'s Mot. Amend at 5.  With the benefit of clarity, the plaintiff had two new claims and modifications to a third.  The first new claim alleges that the defendants never made a FONSI.  Am. Compl. ¶¶ 132–135.  The second new claim alleges that the defendants' EA violated several of NEPA's procedural requirements.  *Id.* ¶¶ 139–144.  The modified claim, like its forerunner, accepts that the FSA did make a FONSI, but alleges that the FONSI is invalid.  *Compare* Compl. ¶¶ 113–16 *with* Am. Compl. ¶¶ 136–138.

The defendants timely filed their opposition to the plaintiff's motion, *see* Defs.' Opp'n, to which the plaintiff filed a timely reply, *see* Pl.'s Reply Supp. Mot. Amend ("Pl.'s Reply"), ECF No. 51.  The plaintiff's motion for leave to amend is now ripe.

## II.     LEGAL STANDARD

"Leave to amend a complaint under Rule 15(a) 'shall be freely given when justice so requires.'"  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (quoting FED. R. CIV. P. 15(a)).  "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Nevertheless, leave to amend may be denied for various reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . . ."  *Id.*[3]  "[T]he

---

[3]      The plaintiff seems to understand *Foman* to have identified factors to be weighed when determining whether to grant leave to amend a complaint.  *See* Pl.'s Mot. Amend at 8.  Yet, *Foman* lists independent reasons such a motion might be denied.  *Firestone*, 76 F.3d at 1208 ("Although the grant or denial of leave to amend is committed to a district court's discretion, it is an abuse of discretion to deny leave to amend unless there is sufficient

party opposing the amendment bears the burden to show why leave should not be granted." *Connecticut v. U.S. Dep't of the Interior*, 363 F. Supp. 3d 45, 54 (D.D.C. 2019); *see also Gudavich v. District of Columbia,* 22 F. App'x. 17, 18 (D.C. Cir. 2001) (affirming district court's order granting leave to amend because non-movant "failed to show prejudice from the district court's action in allowing the [movant's] motion to amend"); *Butler v. White*, 67 F. Supp. 3d 59, 66 (D.D.C. 2014) (explaining that Rule 15(a)'s "loose standard for allowing amendment" warrants placing "the burden of convincing the Court why the amendment should not be granted" on "the party opposing amendment"). Ultimately, "the grant or denial of leave to amend is committed to a district court's discretion," *Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 860 (D.C. Cir. 2015), but "outright refusal to grant the leave without any justifying reason appearing for the denial" is an abuse of discretion, *Foman,* 371 U.S. at 182; *see also Brink v. Cont'l Ins. Co.*, 787 F.3d 1120, 1129 (D.C. Cir. 2015) (finding "error in the district court's complete failure to provide reasons for refusing to grant leave to amend").

## III. DISCUSSION

The defendants present three reasons that the plaintiff's motion for leave to amend the complaint should be denied: (1) the plaintiff has unduly delayed before requesting leave to amend the complaint; (2) the proposed amendments are futile; and (3) the plaintiff demonstrated a dilatory motive. Those reasons are discussed in turn.

### A. Timeliness

"Undue delay is a valid reason to reject a party's attempt to add a new theory of liability to a complaint." *Elkins v. District of Columbia*, 690 F.3d 554, 565 (D.C. Cir. 2012).

---

reason, such as 'undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by [previous] amendments . . . [or] futility of amendment.'" (quoting *Foman*, 371 U.S. at 182)); *see also Gavin v. Dep't of Air Force*, 314 F. Supp. 3d 297, 305 (D.D.C. 2018) ("Futility alone is a sufficient basis to deny leave to amend.").

8

"Consideration of whether delay is undue . . . should generally take into account the actions of other parties and the possibility of any resulting prejudice." *Atchinson v. District of Columbia*, 73 F.3d 418, 426 (D.C. Cir. 1996). "To show prejudice from a proposed amended pleading, an 'opposing party must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely.'" *Miller v. Gray*, No. 13-cv-2018 (BAH), 2016 WL 8671830, at *2 (D.D.C. Dec. 16, 2016) (quoting *In re Vitamins Antitrust Litig.*, 217 F.R.D. 30, 32 (D.D.C. 2003)). Examples of such disadvantage include when an amended pleading would introduce a new issue into the case after extensive discovery or after the resolution of motions for summary judgment. *Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 39 (D.C. Cir. 2014) (citing *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 247 (D.C. Cir. 1987)); *see also Elkins*, 690 F.3d at 565 (affirming district court's denial of motion to amend that came "nearly five years after the initial complaint and after discovery had closed"). Similarly, an amended pleading might be prejudicial if it "threaten[s] to fundamentally reshape the landscape of the litigation," would require reopening discovery, or would necessitate rescheduling a trial. *Knight*, 808 F.3d at 860 (affirming district court's denial of defendants' motion to amend their answer).

Beyond disadvantage to the non-movant, "the reasons for the moving party failing to include the material to be added in the original pleading" matters for prejudice. 6 Charles A. Wright & Arthur R. Miller et al*., Federal Practice and Procedure* § 1487 (3d ed.). The D.C. Circuit has affirmed the denial of a motion to amend a pleading when the amendment was predicated on "facts known prior to the completion of discovery" and the party "had no reason to wait years before" seeking the amendment. *Knight*, 808 F.3d at 860.

Here, the plaintiff's motion for leave to amend the complaint follows the initial complaint by almost 18 months. The defendants assert that delay is undue because the plaintiff "has possessed the document it alleges prompted the request to amend for many years" and the plaintiff "provides no justification for its delay in seeking to amend its Complaint." Defs.' Opp'n at 8. True, through FOIA, the plaintiff obtained a properly-scanned copy of the July 2015 EA in 2016. *See* Pl.'s Nov. 27, 2018 Ltr. at 5. Thus, if the plaintiff had no reason to wait to seek leave to amend the complaint, denying the plaintiff's request might be appropriate. *See Knight*, 808 F.3d at 860. Yet, the defendants' assertion that the plaintiff has not explained the delay— and had no reason for the delay—is unfaithful to the record. As described in the plaintiff's motion, the import of the version of the July 2015 EA that the plaintiff received in 2016 through FOIA was obscured by its absence from the AR. Pl.'s Mot. Amend at 5 ("Until Defendants corrected their scanning error and confirmed that the updated July EA in the Record was the 'Final' EA, it was unclear to Plaintiff exactly what that document represented."). The plaintiff's position, of course, aligns with the purpose of an AR which is for the agency to gather all information before it at the time of the contested decision. *Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013). Even by the defendants' account, "[t]he lack of check-marks" on the version of the July 2015 EA initially included in the AR "create[d] confusion." Defs.' Dec. 21, 2018 Ltr at 4. Once the confusion was sorted, the plaintiff had a clearer picture of what steps the FSA did, or did not, take before guaranteeing the loan to One More Haul Farm. Pl.'s Mot. Amend at 2, 4–6; Pl.'s Reply at 3–4, 7–8. Within two weeks of that clarification, the plaintiff informed the defendant of its intent to amend the complaint. Joint Status Report (Jan. 4, 2019).

Nor would permitting the amendment visit prejudice upon the defendants. Although the defendants use the word "prejudice" in their opposition to the plaintiff's motion, *see* Defs.' Opp'n at 7–8, 11, they fail to identify a single prejudicial consequence of granting the plaintiff's motion. Furthermore, no form of prejudice that the D.C. Circuit has recognized—introduction of novel issues late in litigation, reopening discovery, reshaping the litigation, changing the schedule for trial, or even changing the schedule for dispositive motions—applies here. Indeed, the proposed amendments would not require any additional changes to the AR, but rather flow from the defendants, at last, completing the AR.

Thus, the timing of the plaintiff's motion for leave to amend is not reason to deny the motion.

### B. Futility

Moving to the defendants' second basis for denying the plaintiff's motion, "[c]ourts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss." *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996). Review of the futility of a motion for leave to amend a complaint is, functionally, "identical to review of a Rule 12(b)(6) dismissal based on the allegations in the amended complaint." *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 215–16 (D.C. Cir. 2010). Of course, that means the facts in the proposed amendment complaint must be accepted as true, and the plaintiff must receive the benefit of all reasonable inferences. *Id.* at 216.

The defendants advance distinct arguments to explain the futility of each of the plaintiff's three proposed amendments. First, the defendants contend that proposed Claim VIII, which alleges that the defendants arbitrarily and capriciously failed to issue a FONSI, *see* Am. Compl. ¶¶ 132–135; Pl.'s Mot. Amend at 13, is waived because the plaintiff never raised this issue with the agency during the public comment period, Defs.' Opp'n at 12–13. As the D.C. Circuit has

11

explained, "the Supreme Court has long admonished, '[p]ersons challenging an agency's compliance with NEPA must structure their participation so that it . . . alerts the agency to the [parties'] position and contentions, in order to allow the agency to give the issue meaningful consideration.'" *Nevada v. Dep't of Energy*, 457 F.3d 78, 88 (D.C. Cir. 2006) (quoting *Pub. Citizen*, 541 U.S. at 764). In some contexts, failing to exhaust an issue in agency proceedings waives the ability to seek judicial review of that issue. *See id.* At the same time, "an EA's or an EIS' flaws might be so obvious that there is no need for a commentator to point them out specifically in order to preserve its ability to challenge a proposed action." *Pub. Citizen*, 541 U.S. at 765; *cf. New York v. Nuclear Regulatory Comm'n*, 681 F.3d 471, 482 (D.C. Cir. 2012) (finding that because petitioners' specific concerns about environmental effect of Nuclear Regulatory Commission's rulemaking were not "so obvious," failure to raise concerns during agency proceedings resulted in waiver).

Even if issue exhaustion applies to the facts of this case, the plaintiff insists that the defendants' duty to issue a FONSI after deciding not to prepare an EIS is "so obvious" that failing to remind the agency of its obligation is not an impediment to judicial review. Pl.'s Reply at 11. Sure enough, CEQ regulations dictate that if an "agency determines on the basis of the [EA] not to prepare a[n] [EIS]," the agency must "[p]repare a finding of no significant impact." 40 C.F.R. § 1501.4(e); *see also Pub. Citizen*, 541 U.S. at 757–58 (spelling out operation of CEQ's regulations). The agency's responsibility under that regulation are obvious. Thus, failing to exhaust this issue before the agency is not a basis for waiver.

Second, the defendants argue against the plaintiff's proposal to modify original Claim VIII from an allegation that the defendants' FONSI was improper to an allegation that the defendants' FONSI, if such a finding was made, was invalid. Defs.' Opp'n at 13–14. The

defendants insist that modification, which is reflected in proposed Claim IX, merely restates original Claim VIII, and thus is impermissible. *Id.*[4] Original Claim VIII did allege that the defendants' FONSI was improper because it lacked adequate support, Compl. ¶¶ 113–16, while proposed Claim IX similarly alleges that the defendants' FONSI determination is invalid due to the lack of support for that finding, Am. Compl. ¶¶ 136–38. At first blush, then, the defendants seemingly are correct that proposed Claim IX succumbs to the rule that "[a]n amended complaint is futile if it merely restates the same facts as the original complaint in different terms . . . ." *Gavin v. Dep't of Air Force*, 314 F. Supp. 3d 297, 304 (D.D.C. 2018); *accord Bell v. United States*, 301 F. Supp. 3d 159, 165 (D.D.C. 2018); *Landrith v. Roberts*, 999 F. Supp. 2d 8, 20 (D.D.C. 2013); *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002). Yet, this rule has an important caveat. Leave to amend a complaint may be denied due to similarities between an original and amended claim when the latter mirrors an original claim that has been, or is being, dismissed. *See Gavin*, 314 F. Supp. 3d at 305 ("Moreover, by repeating these allegations, Gavin effectively seeks 'reinstatement of her claims' against the previously dismissed Defendants."); *Bell*, 301 F. Supp. 3d at 163–65 (calling proposed amended complaint substantially similar complaint that was being dismissed); *Landrith*, 999 F. Supp. 2d at 15–20 (calling proposed amended complaint nearly identical to complaint that was being dismissed); *Robinson*, 211 F. Supp. 2d at 114 ("[T]hese new allegations would be futile because the court has already ruled that the gender-discrimination claim brought under the DCHRA cannot survive the defendant's motion for summary judgment . . . ."). Original Claim VIII was not previously

---

[4] In addition, the defendants baselessly assert that proposed Claim IX is duplicative of proposed Claim VIII. Defs.' Opp'n at 13–14. Proposed Claim VIII, however, alleges that the defendants never issued a FONSI, Am. Compl. ¶¶ 132–35, while proposed Claim IX alleges, in the alternative, that if the defendants' issued a FONSI, the FONSI was invalid because the defendants' "NEPA documents do not make a convincing case or provide a reasonable explanation that could support an actual, valid FONSI," *id.* ¶¶ 136–38.

dismissed, nor is it being dismissed today. Thus, the similarity between that claim and proposed Claim IX is not a reason to find the amendment futile.

Finally, proposed Claim X, the last of the three amended claims, alleges that the defendants' EA was invalid due to eight violations of NEPA's procedural requirements. Am. Compl. ¶¶ 139–42. The defendants oppose this amendment on several grounds.

Some bases for the defendants' opposition to proposed Claim X are repetitive. As one example, the defendants argue that the plaintiff unjustifiably delayed before bringing proposed Claim X. Defs.' Opp'n at 15. As another example, the defendants argue that insofar as proposed Claim X alleges that the EA was procedurally defective because the defendants failed to issue a FONSI, that allegation has been waived. *Id.* at 14. For reasons already described, each of those arguments is unavailing.

What remains of the defendants' position is equally unpersuasive. One allegation in proposed Claim X is that the defendants violated NEPA's procedural requirements by "fail[ing] to consider public comments on the proposed EA." Am. Compl. ¶ 141. The defendants respond that, in fact, they "contracted with an environmental consulting firm for the very purpose of reviewing the May 2015 EA/FONSI in consideration of the public comments that FSA received." Defs.' Opp'n at 15. The defendants' contention, however, is compatible with the plaintiff's allegation. Certainly the defendants could have hired a consultant to review public comments on the May 2015 EA—indeed, the record signals that they did so—without the consultant, or the agency, having performed the assigned task at the level NEPA requires. To that point, the plaintiff notes that, on July 20, 2015, it submitted a lengthy comment on the May 2015 EA and then two days later the defendants issued the July 2015 EA which did not address the plaintiff's comment. Pl.'s Reply at 18–19.

14

Another allegation in proposed Claim X is that the defendants "fail[ed] to provide the public with sufficient documentation, including appendices, for meaningful comment on any EA." Am. Compl. ¶ 141. More specifically, the plaintiff claims that the "FSA would not provide Plaintiff the documents cited in the May NEPA document, requiring Plaintiff to submit a FOIA request." Pl.'s Reply at 20. In response, the defendants dispute the factual premise, answering that "all of the underlying documents were made available for review in FSA's office and electronic copies were provided upon request." Defs.' Opp'n at 15. The defendants' factual dispute is not a basis for denying the plaintiff's motion, which is judged as if the defendants had filed a Rule 12(b)(6) motion.[5]

Lastly, proposed Claim X alleges that the defendants did not make a FONSI available for notice and comment, Am. Compl. ¶ 141, to which the defendants answer that not only did they make the FONSI available for comment, the plaintiff commented, Defs.' Opp'n at 14. Here, however, as the plaintiff responds, the defendants miss the point of the plaintiff's allegation. The allegation that defendants never made a FONSI available for comment follows from the separate allegation that nothing in the May 2015 EA, which was made available for comment, qualified as a FONSI. Pl.'s Reply at 18. Whether, then, a FONSI was made available for comment cannot be resolved until a determination is made about whether anything attached to the May 2015 EA

---

[5] While the defendants argue that, in some instances, the record before the Court at the time the plaintiff seeks leave to amend the complaint might reveal that an amendment is futile, no matter the plaintiff's allegations, Defs.' Opp'n at 14 (citing *Ross v. DynCorp*, 362 F. Supp. 2d 344, 364 n.11 (D.D.C. 2005)), the record here does not contradict the plaintiff's allegation. What the defendants cite to support that they made available the necessary documents are public notices that the draft EA itself was available for review and comment. *Id.* at 15 (citing Defs.' Opp'n, Ex. 7, Public Notices, ECF No. 46-7). NEPA's procedures, however, are designed to "insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken. The information must be of high quality. Accurate scientific analysis, expert agency comments, and public scrutiny are essential to implementing NEPA." 40 C.F.R. § 1500.1(b); *see also Robertson*, 490 U.S. at 349 (noting that this disclosure requirement "guarantees that the relevant information will be made available to the larger audience that may also play a role in both the decisionmaking process and the implementation of that decision").

was a FONSI.  At this juncture, the plaintiff's allegation that the defendants never issued a qualifying FONSI is accepted.

In sum, the defendants have not shown the futility of any of the plaintiff's proposed amendments.

### C. Dilatory motive

Finally, the moving party's "dilatory motive" may warrant denying a motion for leave to amend a complaint.  *Knight*, 808 F.3d at 860.  Dilatory motives may be present "where a party has ample time to amend a pleading before a court takes dispositive action and fails to do so." *Williams v. Savage*, 569 F. Supp. 2d 99, 107–08 (D.D.C. 2008).

Here, too, the defendants observe that the plaintiff possessed the document on which the proposed amendment relies since 2016 and the "failure to bring the claims in its original pleadings and its subsequent delay of over a year to seek to amend its complaint reflects a dilatory motive."  Defs.' Opp'n at 16.  As explained, *see* Section III.A, *supra*, while the plaintiff's FOIA request yielded an accurate copy of the July 2015 EA in 2016, the veracity and import of that document were not revealed until December 2018 when the defendants explained the discrepancy between the FOIA version and the AR version.  Then, the defendants identified the FOIA version as the final EA and swapped the correct version for its misleading cousin previously included in the AR.  From there, the plaintiff swiftly moved for leave to amend.

Still, the defendants maintain that any confusion about the July 2015 EA could have been addressed sooner, as the plaintiff had done with several other concerns about the AR.  Defs.' Opp'n at 1, 5–6, 16.  From the start of this case the plaintiff has been coaxing the complete AR from the defendants.  *See* Pl.'s Dec. 22, 2017 Ltr. (expressing concerns about documents missing from AR); Pl.'s Jan. 24, 2018 Ltr. (same); Pl.'s Nov. 2, 2018 Ltr. (same); Pl.'s Nov. 5, 2018 Ltr. (same); Pl.'s Nov. 14, 2018 Ltr. (same); Pl.'s Nov. 27, 2018 Ltr. (same); *see also* Pl.'s Mot.

Compel AR; *Food & Water Watch*, 325 F. Supp. 3d at 58–59 (explaining reasons for granting plaintiff's motion to compel the complete AR).  While the plaintiff did not identify the problem with the July 2015 EA until its November 27, 2018 letter, each preceding letter represented that the plaintiff's "review of the AR continues and additional issues may arise."  Pl.'s Dec. 22, 2017 Ltr. at 1; *accord* Pl.'s Jan. 24, 2018 Ltr. at 1; Pl.'s Nov. 2, 2018 Ltr. at 1; Pl.'s Nov. 5, 2018 Ltr. at 1; Pl.'s Nov. 14, 2018 Ltr. at 1.  Given the litany of problems with the AR that the plaintiff has identified over the course of this litigation, the plaintiff can hardly be faulted for failing to catch all of them at once.  The defendants might suspect that the plaintiff was sitting on this known problem, but the record exhibits that the plaintiff was communicating concerns about the AR to the defendants "as soon as [the plaintiff] identified them," rather than reserving all problems for a single letter, to promote speedier resolution.  Defs.' Opp'n, Ex. 3, Pl.'s Nov. 29, 2018 Ltr. at 1, ECF No. 46-3.

At bottom, the defendants have not met their burden of showing that the timing of the plaintiff's motion for leave to amend reflects dilatory motives.

## IV.   CONCLUSION

For the foregoing reasons, the plaintiff's motion for leave to amend the complaint is granted and the Clerk of the Court shall docket the plaintiff's amended complaint.  An appropriate Order accompanies this Memorandum Opinion.

Date: June 10, 2019

_____
BERYL A. HOWELL
Chief Judge